# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION AT COLUMBUS

PARIS R. BOONE,

|                    |   |                                      |
|--------------------|---|--------------------------------------|
| Petitioner,        | : | Case No.  2:17-cv-332                |
|                    |   |                                      |
| - vs -             |   | Chief Judge Algenon L. Marbley       |
|                    |   | Magistrate Judge Michael R. Merz     |
|                    |   |                                      |
| ALAN J. LAZAROFF, Warden[1], |  |                           |
| Mansfield Correctional Institution |  |                     |
|                    | : |                                      |
| Respondent.        |   |                                      |

# DECISION AND ORDER

This habeas corpus case is before the Court on Petitioner's Objections (ECF No. 25) to the Magistrate Judge's Report and Recommendations (the "Report," ECF No. 12); Respondent has timely replied to the Objections (ECF No. 26).

When a party files objections to a magistrate judge's report on a dispositive matter, the District Judge is required to review *de novo* those portions of the Report to which specific objection is made. Fed.R.Civ.P. 72(b)(3). Having conduced that review, the Court rules on the Objections as set forth below.

The sole pleaded ground for relief in this case is:

> **Ground One:** A courtroom is unconstitutionally closed when some members of the public are excluded without adequate justification. *Waller v. Georgia*, 467 U.S. 39; *Press-Enterprise Company v. Superior Court of California*, 464 U.S. 501.

---

[1] Respondent advises that Alan J. Lazaroff is the current Warden at Mansfield Correctional Institution and thereby has custody of Petitioner. The caption is ordered amended as set forth above.

1

(Petition, ECF No. 1, PageID 15.)  The last reasoned state court judgment on this issue is *State v. Boone*, 2015-Ohio-2648 (Ohio App. 10th Dist., Jun. 30, 2015).  In that court Boone presented this claim as his Fifth Assignment of Error which the Tenth District decided as follows:

### 2. The "Closing" of the Courtroom

{¶ 20} The trial court also stated that an unnamed witness indicated that White and Boone planned to have the courtroom hijacked by outsiders. (Tr. 52.) As a result, the trial court ordered the courtroom deputies to address anyone who came into the courtroom and, apparently, to run warrant checks to determine if anyone had outstanding arrest warrants. Those with warrants would be arrested. During the trial, Boone's trial counsel proffered that Boone's supporters were prohibited from coming in the courtroom if they were late and that they could not come and go as the state's witnesses could. Boone now complains that this amounted to a closure of the courtroom that violated his right to a public trial. We disagree.

{¶ 21} The right to a public trial is a fundamental constitutional guarantee under the Sixth Amendment to the United States Constitution and Ohio Constitution, Article I, Section 10. *State v. Drummond,* 111 Ohio St.3d 14, 2006-Ohio-5084, ¶ 49-50, 854 N.E.2d 1038, citing *State v. Lane*, 60 Ohio St.2d 112, 119, 397 N.E.2d 1338 (1979). This guarantee is a "cornerstone of our democracy which should not be circumvented unless there are extreme overriding circumstances." *Id*.

{¶ 22} The trial court's actions in dealing with spectators did not amount to a closing of the courtroom for purposes of a public trial analysis. *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, ¶ 100-01, 842 N.E.2d 996. Although Boone claims that his supporters were not allowed in the courtroom, the record simply does not support his claim. The courtroom is not closed even though some spectators may choose not to enter because of fear they might be arrested on an outstanding warrant. Accordingly, because the trial court did not close the courtroom, the trial court did not violate Boone's right to a public trial.

*Id.*, quoted in Report, ECF No. 12, PageID 1493-94.  The Magistrate Judge concluded that this decision was not an objectively unreasonable application of the relevant holdings of the Supreme Court in *Waller v. Georgia*, 467 U.S. 39 (1984), and *Press-Enterprise Company v. Superior Court*

2

*of California*, 464 U.S. 501 (1984)(Report, ECF No. 12, PageID 1504).

At the outset of his Objections, Petitioner summarizes his argument:

> Mr. Boone's habeas challenge has one ground: a courtroom is unconstitutionally closed when some members of the public are excluded without adequate justification. ECF No. 1. Contrary to the finding in the Magistrate Judge's Report and Recommendations (ECF No. 12), the state court of appeals unreasonably applied Supreme Court of the United States precedent, *Press-Enterprise Co. v. Superior Court,* 464 U.S. 501 (1984), and *Waller v. Georgia*, 467 U.S. 39 (1984), when it concluded that the courtroom was not unconstitutionally closed during Mr. Boone's trial.

(Objections, ECF No. 25, PageID 1582).

To obtain habeas corpus relief when a state court has decided the relevant federal constitutional claim on the merits, a petitioner must show that the state court's decision is contrary to or an objectively unreasonable application of clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1). In interpreting this language, the Supreme Court has distinguished between "holdings" and "dicta." "We have explained that "'clearly established Federal law' for purposes of §2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." *Woods v. Donald*, 575 U.S. 312 (2015) quoting *White v. Woodall,* 572 U.S. 415, 417 (2014). The Court continued "To satisfy this high bar, a habeas petitioner is required to "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*, quoting *Harrington v. Richter*, 562 U.S. 86, 103.

> AEDPA's standard is intentionally "' "difficult to meet." ' " *White v. Woodall*, 572 U. S. [415], ___, 134 S. Ct. 1697, 1702, 188 L. Ed. 2d 698, 704 (2014) (quoting *Metrish v. Lancaster*, 569 U. S. ___, ___, 133 S. Ct. 1781, 1786, 185 L. Ed. 2d 988, 996 (2013)). We have explained that "'clearly established Federal law' for purposes of §2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." *White*, 572 U. S., at ___, 134 S. Ct. 1697, 1702, 188 L. Ed. 2d 698, 704 (some internal quotation marks

3

> omitted). "And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Id.*, at ___, 134 S. Ct. 1697, 1702, 188 L. Ed. 2d 698, 704 (same). To satisfy this high bar, a habeas petitioner is required to "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U. S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

*Woods v. Donald*, 575 U.S. 312 (2015).

Early in the history of the Republic, Chief Justice Marshall explained the distinction between dictum and holding:

> [I]t is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the Court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated.

*Cohens v. Virginia,* 19 U.S. 264, 399-400 (1821) (Marshall, Ch. J.). *See also United States v. Rubin*, 609 F.2d 51, 69 n.2 (2nd Cir. 1979) (Friendly, J., concurring). "Dicta is the '[o]pinion[] of a judge which do[es] not embody the resolution or determination of the specific case before the court.'" *Hinchman v. Moore*, 312 F.3d 198 (6th Cir. 2002)(quoting Black's Law Dictionary 454 (6th ed.1990).

In his Objections, Petitioner contends that the following language constitutes the holding of *Press-Enterprise*:

> The value of openness lies in the fact that people not actually attending trials can have confidence that standards of fairness are being observed; the sure knowledge that *anyone* is free to attend

4

> gives assurance that established procedures are being followed and
> that deviations will become known.

(ECF No. 25, PageID 1583, quoting *Press-Enterprise*, 464 U.S. at 508 (emphasis in original)).

The Magistrate Judge held this "language cannot be taken literally as the holding of the Court,

because many people would not be free to attend many trials," such as "those constitutionally

restrained of their liberty." (Report. ECF No. 12, PageID 1500.)  Petitioner objects that

> The Magistrate Judge is playing semantics. The context of the
> sentence inherently demonstrates that the "anyone is free to attend"
> language is limited to those physically free and able to do so. There
> is no way to reasonably interpret that sentence to mean that openness
> is violated because one cannot attend the trial due to that person
> being in a coma, or recovering from surgery, or unable to leave their
> place of employment, or any other prohibitive status conceivable in
> reality.

(Objections, ECF No. 25, PageID 1584.)  The Court agrees with Petitioner that the word "anyone"

in *Press-Enterprise* cannot reasonably be interpreted to include persons who are physically unable

to attend a trial.  When the Magistrate Judge held that "anyone" cannot be taken literally to include

everyone, he was not "playing semantics," but suggesting, as Petitioner now claims is required,

that the words be read in context.  As the Sixth Circuit has recently reminded us, all legal language

must be read in context.

> In the interpretation of a legal text, as in an ordinary conversation,
> the way in which a drafter (or speaker) uses an indeterminate word
> is critical for deciding the word's meaning on a particular occasion.
> That is true for the phrase we must interpret in this case: "different
> location." Consider this phrase in relation to a store. Depending on
> the context, the phrase could refer to a distinct place within the store
> or to a separate place outside it. Suppose, for example, a friend says
> to you while cellphone shopping, "The cellphones used to be right
> here, but must have been moved to a different location." You would
> likely take your friend to be referring to a different area within the
> store. Suppose instead your friend says, "We have to go to a
> different location because the cellphone I want is out of stock." You
> would likely take your friend to be referring to a different store.
> Context is key to meaning.

*United States v. Hill*, ___ F.3d ___, 2020 U.S. App. LEXIS 19817 (6th Cir. Jun. 25, 2020).

The critical piece of context in distinguishing holding from dictum in a precedential case is what question the court creating the precedent was deciding. In *Press-Enterprise*, the general question before the Supreme Court was whether the right to an open and public trial included the right to public voir dire[2]. Having answered yes to that question, the Court held that the constitutional presumption of openness could be overcome findings sufficient to support the trial court's conclusion that an open proceeding would threaten the defendant's right to a fair trial and the prospective jurors' interests in privacy. Its language about "anyone" attending is in the context of discussing the value of open trials generally and its origins in colonial practice. It did not hold that any criminal trial must be open to anyone physically able to attend. Instead, it remanded the case for a determination of whether there were parts of the six-week voir dire transcript that could be released without compromising juror privacy interests.

Petitioner argues this Court should interpret *Press-Enterprise* as holding it is unconstitutional to exclude any member of the public from a criminal trial "without adequate justification." He reads the Report as holding that no courtroom closure occurred here. That is a misreading. Plainly, as the Magistrate Judge recognized, the courtroom was closed to all persons who were identified at the entrance as persons with an outstanding arrest warrant and then arrested. What the Report concluded was that the Supreme Court had never held that excluding that category of persons constituted an unconstitutional courtroom closure (Report, ECF No. 12, PageID 1500). In his Objections, Boone points to no Supreme Court case that deals at all with this kind of

---

[2] To illustrate the § 2254(d)(1) standard, a state court holding that voir dire could generally be closed would be "contrary" to *Press-Enterprise*.

courtroom closure.  To put it the other way around, there is no Supreme Court case holding that a person is denied a fair trial under the Sixth Amendment when the Court excludes from the general audience persons who have been arrested on an outstanding warrant.

As the Tenth District found, this exclusion or partial closure took place in the context of specific security threats, to wit, a threat by Boone and his co-defendant to "hijack" the courtroom, coupled with their pretrial disciplinary record of violent misconduct.  *Boone*, 2016-Ohio-2648, ¶ 13.  Because of those facts, the trial judge ordered the defendants be shackled and that Boone wear a stun belt, but rejected a law enforcement request that they be handcuffed.  Although Boone challenged these restraints on appeal, the Tenth District found they were adequately justified and he has not brought that claim forward in habeas.

Boone's trial lawyer claimed the deputies were excluding his supporters from the courtroom, but the Tenth District found the record did not support that claim and Boone has pointed to no evidence of record to overcome that finding.  See 28 U.S.C. § 2254(e)(1).  There is also no record of the results of the warrant screening, e.g., how many persons were arrested when they tried to enter the courtroom with an outstanding warrant or how many persons, knowing of the warrant screening, simply did not come to the courthouse.  Nor do we know how many people showed up with a warrant and were sent without arrest[3] to municipal court to pay off their fines and then came back.  The only record on the exclusion is that the judge told counsel that people trying to enter who had outstanding warrant would be arrested.

In the absence of a record, the Court cannot assume that even one person who would have

---

[3] Perhaps because of a policy of not arresting persons on minor traffic offense warrants.

attended did not do so because of the judge's order. But even making that assumption, under Petitioner's reading of *Press-Enterprise*, exclusion of that one person would make the trial unfair and entitle Boone to have his two convictions for aggravated murder vacated. That is a vastly overbroad reading of the holding in *Press-Enterprise*.

Boone also reads the Report as concluding this partial closure was justified on the basis of excluding Boone's "supporters." (Objections, ECF No. 25, PageID 1585-87). Boone asserts that this partial closure of the courtroom must be assessed under the "modified *Waller*" test adopted by the Sixth Circuit in *United States v. Simmons*, 797 F.3d 409 (6th Cir. 2015). However, as Boone rightly concedes, the Supreme Court has never applied *Waller* to partial closures (Objections, ECF No. 25, PageID 1586). Clearly, then, the Tenth District cannot have been unreasonably applying clearly established Supreme Court precedent when it upheld this partial closure.

Moreover, the Report did not decide that this partial closure was justified because it was a means of excluding Boone's supporters. Instead, the Magistrate Judge found Boone's trial attorney claimed that was the effect of the closure, but provided no proof, as the Tenth District found (Report, ECF No. 12, PageID 1502). The Report also concluded that if Boone's trial attorney was correct in his assertion, that would support the trial judge's order, because of the threat of a courtroom "hijacking." *Id.*

Boone argues exclusion of spectators from the first row of seats in the courtroom, which the trial judge did in addition to shackling the co-defendants, would have been enough (Objections, ECF No. 25, PageID 1586). But this is not the argument Boone fairly presented to the Tenth District. Instead, he claimed "Boone did not enjoy a public trial because his supporters were not permitted entry into the courtroom." (Appellant's Brief, State Court Record, ECF No. 6-1, PageID 157). As noted above, the Tenth District found there was no evidence to

8

support this claim. *State v. Boone*, 2015-Ohio-2648, ¶ 22 (Ohio App. 10th Dist. Jun. 30, 2015). Indeed, on direct appeal, Boone made no claim at all relating to screening of prospective spectators for outstanding arrest warrants. Instead, he claimed that "[d]uring the trial, Boone's trial counsel proffered that Boone's supporters were prohibited from coming in the courtroom if they were late and that they could not come and go as the state's witnesses could. Boone now complains that this amounted to a closure of the courtroom that violated his right to a public trial." *Id.* at ¶ 20; Appellant's Brief, State Court Record 6-1, PageID 157.

Boone also objects to the Magistrate Judge's conclusion that "No public interest is served by commanding that persons with outstanding warrants be allowed to attend murder trials without first clearing the warrant." (Objections, ECF No. 25, PageID 1587, quoting Report, ECF No. 12, PageID 1504.) Boone does not suggest any particular public interest that is served by allowing such persons to attend beyond allowing any other person to attend. The Report was reacting to Boone's citation of Justice Sotomayor's observations in dissent about the ubiquity of arrest warrants in *Utah v. Strieff,* 136 S. Ct. 2056, and the Magistrate Judge's comments about the utility of arrest warrants even for traffic offenses are dicta not necessary to the recommended disposition of the case.

**Conclusion**

Based on the foregoing analysis, Petitioner's Objections are overruled, and the Petition is ordered dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner is denied a certificate of appealability. If he continues to be represented by the Ohio Public Defender on appeal, he should be permitted to appeal *in forma pauperis*.

DATED: September 28, 2020

_____
Algenon L. Marbley, Chief Judge

9